UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


MARSHALL INVESTMENTS                        CIVIL ACTION
CORPORATION

VERSUS                                      NO. 05-6486

R.P CARBONE COMPANY, ROSS P.                SECTION "R" (1)
CARBONE, ANN C. CARBONE, VINCENT
CARBONE, AND WENDY F. CARBONE


                        **ORDER AND REASONS**

   Plaintiff Marshall Investments moves to dismiss two of defendants' counterclaims for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). Plaintiff moves separately to dismiss a third counterclaim. For the following reasons, the Court GRANTS in part and DENIES in part plaintiff's first motion and GRANTS the second.


**I. BACKGROUND**

   Plaintiff Marshall Investments alleges that in late 2004, Carbone Properties of Audubon approached Marshall to obtain a loan to finance the renovation of a building into a full-service

hotel in New Orleans. (R. Doc. 1 at 2). Marshall entered into a Construction-Term Loan Agreement with CPOA to fund the project, which CPOA estimated would cost $15,010,000. (*Id.* at 3). The loan agreement was executed by each of the named defendants as personal or corporate guarantors. (*Id.* at 5). CPOA also executed a promissory note for $26,600,000 on December 30, 2004. (*Id.*). Between January 14, 2005 and June 23, 2005, Marshall disbursed funds to CPOA. (*Id*. at 8). On June 23, CPOA allegedly told Marshall that it would need an additional $5,049,000 over the amount specified in the loan agreement to complete the project. (*Id.*). Over the next two months, CPOA allegedly revised its estimate of the project cost a number of times, sought additional financing, and failed to make deposits equivalent to the amount by which the project would be over-budget, as required under the agreement. (*Id*. at 9-13). Marshall contends that all of these events constituted defaults under the terms of the loan agreement. On or about August 17, 2005, Marshall allegedly notified CPOA that it had defaulted on the terms of the agreement. (*Id*. at 12). Marshall contends that because CPOA defaulted, it was entitled to accelerate the unpaid principal and unpaid interest owed under the note. (*Id*. at 14). Consequently, on November 11, 2005, Marshall demanded that CPOA immediately pay it $6,883,674, which was the unpaid principal and

interest owed as of that date. (*Id.*). CPOA allegedly did not make any payments, and Marshall filed this action asserting breach of contract against the guarantors. (*Id.*). CPOA intervened to protect its rights under the loan agreement. (R. Doc. 18 at 1).

The guarantor defendants and CPOA jointly assert numerous counterclaims based on a differing set of facts. Specifically, defendants assert that when CPOA ran into unexpected costs, it sought additional financing for the project from a mezzanine lender and that Marshall consented to this course of action. (R. Doc. 26 at 14, 18). They assert that although Marshall had no intention of continuing to fund the project under the terms of the loan, it advised CPOA that it would do so once CPOA obtained a commitment from a mezzanine lender. (*Id.* at 18). CPOA engaged the services of Jack Shoyket to secure a mezzanine loan. (*Id.*). Defendants allege that in October or November of 2005, Shoyket "brought in" a mezzanine lender through a loan broker, Mark Savan. (*Id.* at 19). Through Savan, the lender allegedly indicated that it was very interested in issuing a loan. (*Id.*).

However, when the lender allegedly contacted David Devorak, the Special Assets Consultant of Marshall, Devorak made "defamatory, insulting and other negative statements to the mezzanine lender" about Ross Carbone, one of the guarantors, and

3

CPOA. (*Id*.). Devorak allegedly told the lender to "stay away from the project" because Ross Carbone was a "bad person." (*Id*.). Defendants assert that Devorak made these comments in order to deter the lender from dealing with CPOA, so it would be forced to default on its obligations under the agreement. (*Id.* at 20). CPOA further alleges that when it sought a mezzanine loan from a second lender, Marshall refused to continue funding the project and formally defaulted CPOA under the agreement. (*Id.*).

On March 20, 2006, CPOA filed counterclaims against Marshall for breach of contract, detrimental reliance, breach of good faith and fair dealing, tortious interference with business relations, and defamation. The guarantor defendants filed a counterclaim for defamation on the same day. On April 6, Marshall moved to dismiss, or in the alternative for more definite statement, as to both parties' defamation claims and CPOA's tortious interference with business dealings claim. Subsequently, on May 10, the guarantors and CPOA jointly filed an amended version of the March 20 counterclaims, in which the guarantors continued to allege defamation, CPOA continued to allege defamation and tortious interference with business relations, and CPOA added a new claim for violation of the Louisiana Unfair Trade Practices Act, La. Rev. Stat. § 51:1401,

*et seq*.  (R. Doc. 26).  Marshall then moved to dismiss this new counterclaim as well.

**II. LEGAL STANDARD**

    **A. Motion to Dismiss Under 12(b)(6)**

In a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff.  *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *American Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991).  The Court must resolve doubts as to the sufficiency of the claim in plaintiff's favor.  *Vulcan Materials Company v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001).  A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).  Dismissal is typically warranted only if it appears certain that the plaintiff cannot prove any set of facts in support of her claim that would entitle her to relief.  *Id.; Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir. 1995) (quoting *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)).

**III. ANALYSIS**

    **A. Defamation Counterclaims**

To recover for defamation in Louisiana, a claimant must prove five essential elements: (1) defamatory words; (2) publication (communication to someone other than the person defamed); (3) falsity; (4) malice, actual or implied; and (5) injury. *Cangelosi v. Shwegmann Brothers Giant Super Mkts.*, 390 So. 2d 196, 198 (La. 1980) (citations omitted). If one of these elements is lacking, the cause of action fails. *Costello v. Hardy*, 864 So. 2d 129, 140 (La. 2004) (citations omitted).

    **1. Guarantors' Counterclaim**

After twice amending their pleadings, this court must assume that the guarantor defendants' counterclaim for defamation arises from Devorak allegedly telling the potential lender to "stay away from the project" because Ross Carbone was a "bad person." Marshall asserts that these alleged comments are purely statements of opinion and thus can never be proven false. (R. Doc. 27). A pure statement of opinion will not ordinarily be actionable in defamation because it can be neither true nor false. *Bussie v. Lowenthal*, 535 So.2d 378, 381 (La. 1988) ("[W]ithout an assertion of fact there can be no falsity."). However, if the opinion implies the existence of underlying facts, it may be actionable. *Id.* ("Even if no facts are

expressly stated, the opinion may give rise to an unspoken inference that certain facts are true."). If the opinion creates an inference that certain facts exist, the implied factual assertion must itself be defamatory for the statement to be actionable. *Id*. Even if an opinion gives rise to false factual inferences, the defendant will be liable only if the statement was made with actual malice. *Id.* Moreover, "the factual inference created by the statement [of opinion] must be ascertainable by a reasonable person with some degree of certainty." *Fitzgerald v. Tucker*, 737 So. 2d 706, 717 (La. 1999) (quoting *Bussie*, 535 So. 2d at 382-83). "Otherwise, juries would be asked to engage in guessing-games about possible uncomplimentary inferences that can be drawn from statements of opinion, and the First Amendment protections afforded in this area would become worthless." *Id*. Thus, an expression of opinion is actionable only if it implies the existence of underlying facts ascertainable by a reasonable person with some degree of certainty, and the implied factual assertions are false, defamatory, and made with actual malice. *Id*.

The question of whether a statement is one of fact or opinion depends upon the circumstances in which the statement was made. *Fitzgerald*, 737 So. 2d at 718. In *Mashburn v. Collin,* 355 So. 2d 878, 885 (La. 1977), the Louisiana Supreme Court held that

"the crucial difference between statement[s] of fact and opinion depends upon whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact."  From this test it is clear that the statements Devorak allegedly made were statements of opinion.  His statement to "stay away from the project" because Carbone was a "bad person" was opinionated advice to the mezzanine lender based on the nature of Carbone's character.  *See Singleton v. St. Charles Parish*, 833 So. 2d 486, 496 (La. Ct. App. 2002) (finding statements that plaintiff was lazy and did not want to work to be statements of opinion).  Devorak's statements are thus only actionable if they imply underlying, ascertainable facts that are themselves defamatory.

The reasonable inferences that may be drawn from a statement of opinion will vary depending on the circumstances of the case. *Fitzgerald*, 737 So. 2d at 718.  In Louisiana, "[w]hether a particular statement is *objectively* capable of having a defamatory meaning is a legal issue to be decided by the court, considering the statement as a whole, the context in which it was made, and the effect it was reasonably intended to produce in the mind of the average listener."  *Kosmitis v. Bailey*, 685 So.2d 1177, 1180 (La. Ct. App. 1996) (emphasis in original).  The

guarantor defendants have twice amended their answer in this dispute, and yet still the most specific allegation they have provided to the court is that Devorak once called Ross Carbone a "bad person" to an unknown lender.  This context does not lead to the conclusion that Devorak's statement could have a defamatory meaning.  It is impossible for a reasonable listener to discern with certainty the defamatory facts, if any, that Devorak implied in his alleged comment about Ross Carbone.  The phrase "bad person" does not "rest on 'a core of objective evidence.'" *Underwager v. Channel 9 Australia*, 69 F.3d 361, 367 (9th Cir. 1995) (stating that the phrase "intrinsically evil" is not capable of verification and thus is not defamatory).  Because a reasonable listener would construe Devorak's words as nothing more than "loose, figurative, or hyperbolic," they are not actionable.  *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990).

Furthermore, even if the guarantor defendants could show that Devorak's statement was defamatory in nature, only Ross Carbone could show as a matter of law that he suffered any injury as a result.  In defamation actions, "the plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused *plaintiff* damages."  *Sassone*, 626 So. 2d at 350 (emphasis added).  CPOA,

not the guarantor defendants, would have suffered the monetary injuries, if any, as a result of Devorak's statements.  It was CPOA who lost out on the potential lender, not the guarantor defendants.  Ross Carbone could recover for non-pecuniary or general damages, such as injury to reputation, as a result of a defamatory statement, but he "must present competent evidence of the injuries suffered."  *Costello v. Hardy*, 864 So. 2d 129, 141 (La. 2004).  As Devorak made no statements about the other guarantors, they cannot show reputational injury.  Accordingly, their claims for defamation must be dismissed for this reason as well.  For the foregoing reasons, the court dismisses the guarantor defendants' counterclaim for defamation.

### 2. CPOA's Counterclaim

For the reasons discussed above, this court also dismisses CPOA's counterclaim for defamation because it likewise only alleges only one generic, non-defamatory statement of opinion. Additionally, even if we are to assume for the purposes of this claim that Devorak's words satisfied each of the five defamation elements under Louisiana law, CPOA still must prove that it, not Carbone or the other guarantor defendants, has standing to sue as a result of the alleged statements.  As this court has stated, "to be actionable, the defamatory words must be 'of and concerning' the plaintiff or, directly or indirectly, cast a

personal reflection on the plaintiff." *In re New York Life Ins. Co. Agents' Class Claimants Solicitation Litigation*, 92 F. Supp. 2d 564, 569 (E.D. La. 1997) (Sear, J.).  Devorak is alleged to have spoken only about Rick Carbone.  He did not make any reference to CPOA, which is a separate business entity. Louisiana courts consistently hold that "'the defamatory words must refer to some ascertainable person, and that person must be the plaintiff.'" *Weatherall v. Dept. of Health and Human Resources*, 432 So.2d 988, 994 (La. Ct. App. 1983) (quoting *Hyatt v. Lindner*, 133 So. 614, 622 (La. 1913)).  Because Devorak's alleged statement was not of and concerning CPOA, it does not have standing to assert its defamation counterclaim against Marshall, and thus the counterclaim must be dismissed.

**B. CPOA's Claim for Tortious Interference with Business Relations**

Louisiana courts have recognized a cause of action for tortious interference with business relations. *Junior Money Bags, Ltd. v. Segal,* 970 F.2d 1, 10 (5th Cir. 1992) (citations omitted); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 601 (5th Cir. 1981).  The cause of action for tortious interference with business derives from article 2315 of the Louisiana Civil Code.  La. Code Civ. P. art. 2315(a) ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."); *Dussuoy,* 660 F.2d at 601.  Tortious

interference is based on the principle that the right to influence others not to deal is not absolute. *Junior Money Bags*, 970 F.2d at 10 (citing *Ustica Enters., Inc. v. Costello*, 434 So. 2d 137, 140 (La. Ct. App. 1983). Louisiana law protects the businessman from 'malicious and wanton interference,' though it permits interferences designed to protect legitimate interests of the actor. *Dussouy*, 660 F.2d at 601. A plaintiff bringing a claim for tortious interference with business must ultimately show "by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff." *Junior Money Bags*, 970 F.2d at 10 (*quoting McCoin v. McGehee*, 498 So.2d 272, 274 (La. Ct. App. 1986). It is not enough to allege that a defendant's actions affected plaintiff's business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party. *See Nowling v. Aero Servs. Int'l Inc.,* 752 F. Supp. 1302, 1312 n.7 (E.D. La. 1990); *Ustica,* 434 So.2d at 140.

Louisiana jurisprudence has viewed this cause of action with disfavor. *JCD Mktg. Co. v. Bass Hotels and Resorts, Inc.,* 812 So.2d 834, 841 (La. Ct. App. 2002). "Louisiana courts have limited this cause of action by imposing a malice element, which requires that the plaintiff show the defendant acted with actual malice." *Id.; Dussouy,* 660 F.2d at 602. "Although its meaning

is not perfectly clear, the malice element seems to require a showing of spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings.  In fact, there appear to be no reported cases in which anyone actually has been held liable for the tort." George Denegre, Jr., et al., *Tortious Interference and Unfair Trade Claims: Louisiana's Elusive Remedies for Business Interference,* 45 Loy. L. Rev. 395, 401 (1999); *see also Junior Money Bags*, 970 F.2d at 11 (noting that tortious interference with business is a "very limited form of recovery" in Louisiana).  In order to sustain a claim for tortious interference with business relations, actual malice must be pleaded in the complaint.  *Dussouy*, 660 F.2d at 602.

Whatever difficulty CPOA may have in ultimately proving this claim, now is not the appropriate time to dispose of it. CPOA pleaded that Devorak's statements improperly influenced the unknown lender to not provide CPOA with a loan.  CPOA also pleaded that the plaintiff's conduct was motivated by actual malice with respect to CPOA instead of a desire to compete for business or maximize profits.  *See JCD Marketing Co.,* 812 So.2d at 841; *Dussouy,* 660 F.2d at 601.  Marshall asserts that it would have been illogical under the circumstances for Devorak to dissuade a mezzanine lender from financing the project, but this

assertion bolsters CPOA's claim.  If it was in Marshall's interest to facilitate a mezzanine loan, any action taken contrary to this course may have been motivated by malice instead of profit maximization.  CPOA's facts thus support the possible conclusion that Devorak acted with malice.  In any event, it would be inappropriate for the Court to resolve the factual question of Devorak's motivation at the pleading stage.  *See So. Serv. Corp. v. Tidy Bldg. Svcs., Inc.*, 2004 WL 2784909 (E.D. La. 2004).  Without making any assessment of the merits of defendants' claims, the Court finds that CPOA sufficiently states a claim for tortious interference with business relations.

### C.   LUTPA

Defendants allege that Marshall's conduct pertaining to the construction loan constitutes a violation of the Louisiana Unfair Trade Practices Act.  *See* La. Rev. Stat. § 51:1405 ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.").  Marshall seeks dismissal of the LUTPA claim because it asserts that defendants have no standing to bring an action under LUTPA.

Under LUTPA, private parties harmed by another party's unfair or deceptive trade practice may bring suit to recover actual damages.  *See* La. Rev. Stat. § 54:1409.  Although the text

of section 1409 states that "*any person* who suffers any ascertainable loss" may bring suit, the Fifth Circuit has given this statute a narrower reading, limiting relief to individual consumers or business competitors. *See Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.,* 922 F.2d 220, 226 (5th Cir. 1991); *Delta Truck & Tractor v. J.I. Case Company,* 975 F.2d 1192 (5th Cir. 1992).

    The Fifth Circuit has restricted the application of "consumer" under LUTPA to individuals who are participants in a "consumer transaction." *Wang Labs.*, 922 F.2d at 226. A consumer transaction requires trade or commerce with a natural person and the subject of the transaction must be intended for personal, family, or household use. *Id.* (*quoting* La. Rev. Stat. § 51:1402(3)). In order to qualify as a "business competitor" under LUTPA, "the plaintiff must actually or potentially engage in business that competes directly or indirectly with the defendant," and the defendant's unfair business methods have damaged plaintiff "in his business pursuits as the defendant's competitor." *Sears, Roebuck & Co. v. Danny Williams Plumbing, Inc.*, 1999 WL 280439 at *3 (E.D. La. 1999); *see also Advanced Logistical Support, Inc. V. Fritz Cos. Inc.,* 2003 WL 21459688, at *10 (E.D. La. 2003).

    Defendants acknowledge the Fifth Circuit precedent

establishing two exclusive categories protected by LUTPA. Defendants do not allege that they were party to a consumer transaction with Marshall, nor do they allege that they were business competitors with Marshall. Rather, defendants cite opinions from Louisiana's appellate courts in support of their position that consumers or business competitors are not the only persons afforded relief under LUTPA. *See Plaquemine Marine, Inc. V. Mercury Marine,* 859 So. 2d 110, 117 (La. Ct. App. 2003); *Barrios v. Associates Commercial Corp.* 481, So. 2d 702, 705 (La. Ct. App. 1985). The Louisiana Supreme Court has yet to address this issue. *Plaquemine Marine,* 859 So. 2d at 117.

    This Court is bound by the decisions of the Fifth Circuit. The Fifth Circuit has affirmed its interpretation of LUTPA as providing a right of action only for business competitors and those participating in a consumer transaction, despite the split among Louisiana's appellate courts. *SCS General Contractors v. Favrot*, 2006 WL 1999206 at *2 (E.D. La. 2006) (*citing Gardes Directional Drilling v. U.S. Turnkey Exploration Co.,* 98 F.3d 860, 867-68 (5th Cir. 1996)). Because defendants do not contend that they are in a class protected by LUTPA under controlling Fifth Circuit precedent, the Court finds that Marshall is entitled to summary judgment on this claim.

**IV. CONCLUSION**

For the reasons stated above, the Court GRANTS Marshall's motion to dismiss the guarantors' and CPOA's counterclaims for defamation and DENIES Marshall's motion to dismiss CPOA's claim for tortious interference with business relations.  The Court also GRANTS Marshall's motion for partial summary judgment on CPOA's claim under LUPTA.

New Orleans, Louisiana, this <u>13th</u> day of September, 2006.

*Sarah Vance*

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE